UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRESIDENT CONTAINER GROUP II, LLC,

                           Plaintiff,

          -against-

SYSTEC CORPORATION d/b/a SYSTEC
CONVEYORS,

                           Defendant.

18-cv-4441 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff President Container Group II, LLC ("Plaintiff" or "PCG") commenced the

instant action on or about April 5, 2018 in the Supreme Court of the State of New York, Orange

County. (*See* Complaint ("Compl."), ECF No. 1, Ex. A.) Plaintiff alleges fraudulent inducement

and breach of contract claims under New York law against Defendant Systec Corporation d/b/a

Systec Conveyors ("Defendant" or "Systec"). (*Id.*) On May 22, 2018, Defendant filed a Notice

of Removal removing the suit to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, *et*

*seq.* (Notice of Removal, ECF No. 1.)

Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 9(b). (*See* ECF No. 12.) For the following

reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/17/2020

1

# BACKGROUND

## I.   Factual Allegations

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff manufacturers corrugated boxes and point-of-purchase displays from its production facility in Middletown, New York (the "Plant").  (Compl. ¶¶ 2, 3.)  To further this business, Plaintiff arranged to purchase a BOBST Model 820, a high speed flexo folder gluer, to produce boxes more efficiently.  (*Id.* ¶ 16.)  This new product, however, required the installation of a conveyer belt system.  (*Id.* ¶ 17.)  For this need, Plaintiff approached Defendant Systec in or about October 2016.  (*Id.* at ¶ 19.)

After two months of negotiations, Plaintiff and Systec entered into two contracts in December 2016.  (*Id.* ¶ 50; Exs. A & B.[1])  One contract was for the design, manufacture, delivery and installation of a Dye Cut Conveyor, (Compl. ¶ 51; Ex. A); the other was for the BOBST 820 Conveyor System and the Mainline Conveyor System.  (Compl. ¶ 52; Ex. B.)

Systec manufactured, delivered, and installed the conveyer systems.  (Compl. ¶ 84.)  But Plaintiff gave notice to Systec that the systems "were not performing as required by the terms of the Contracts."  (*Id.* ¶ 92.)  Although Systec made several attempts to cure the alleged defects, the conveyer systems continued to perform deficiently.  (*Id.* ¶¶ 93–97).  Systec's efforts at repair, however, did "cure[] certain of the deficiencies."  (*Id.* ¶ 102.)

Following these largely failed attempts to remedy the conveyer systems, Plaintiff filed, on April 5, 2018, its complaint in New York state court.  (*Id.* ¶ 1.)  Plaintiff seeks $1,100,015 for

---

[1] Exhibit A of the Complaint begins at ECF No. 1-1 p. 27.  Exhibit B begins at ECF No. 1-1 p. 39.  All subsequent citations for these exhibits refer to the ECF pagination.

ongoing lost production because of the Conveyor Systems' failure, $744,000 for the contract price Plaintiff paid to Defendant, and $515,000 for "special damages." (*Id.* ¶ 142(a)-(b).)

## LEGAL STANDARDS

### I.   12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

II.     **Rule 9(b)**

While the rules of federal pleading typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements.  *See* Fed. R. Civ. P. 9(b) (requiring parties to "state with particularity the circumstances constituting fraud or mistake."). To meet Rule 9(b)'s pleading standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  "[A] plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016) (quoting *Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015)).  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

**DISCUSSION**

First, Systec moves to dismiss Plaintiff's fraudulent inducement claim.  (*See* ECF. No. 12.)  Second, while not conceding it breached the contract, Systec also moves to dismiss the breach of contract claim to the extent Plaintiff seeks damages excluded by the contracts.  (*Id.*) The Court considers each claim in turn.

I.     **Fraudulent Inducement**

Plaintiff bases its fraudulent inducement claim on certain representations that Systec made to Plaintiff during their contract negotiations. Plaintiff alleges these representations were false and induced Plaintiff to enter into the contracts and subsequently suffer damages.  (Compl. ¶¶ 125–142.)  Systec responds that Plaintiff has failed to sufficiently plead fraudulent

4

inducement to contract because it failed to plead with sufficient particularity, it failed to plead any false material representations, it failed to plead reasonable reliance, and it failed to plead fraud separable from the contract.

### a. Particularity Required by Rule 9(b)

Plaintiff fails to plead the alleged fraud with the particularity required by Rule 9(b).  *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  The Complaint alleges that Systec made several representations, including that:

- "the Conveyor Systems shown on said plans would meet Plaintiff's expectations" (Compl. at ¶ 37);

- it "had the skill and expertise required to design, manufacture and install the BOBST Conveyor Systems . . . to utilize[e] the full production capacity of the BOBST 820, and to do so in an automated and efficient manner" (*id.* at ¶ 46);

- "the Conveyor System would be designed, manufactured, modified, installed and configured to integrate with Plaintiff's manufacturing operations so as to result in the same operating at a higher level of efficiency and production" (*id.* at ¶ 47);

- it "would be able to design and install a Conveyor System that integrated with plaintiff's manufacturing operations so as to increase the efficiency of plaintiff's manufacturing operations" (*id.* at ¶ 48);

- "the Conveyor Systems would be designed, manufactured, modified, installed and configured to integrate with Plaintiff's manufacturing operations so as to result in the same operating at a higher level of efficiency and production" (*id.* at ¶ 80);

- it "would design and manufacture Conveyor Systems for Plaintiff that consisted of high quality materials and parts, and that it would provide adequate, efficient and uninterrupted service" (*id.* at ¶ 125);

- it "would design and manufacture Conveyor Systems for Plaintiff that incorporated [Systec's] extensive knowledge and experience in designing automated conveyor systems for plants such as Plaintiff's" (*id.* at ¶ 126); and

- it "would design and manufacture Conveyor Systems for Plaintiff that was superior in its design as to the conveyor systems offered by [Systec's] competitors" (*id.* at ¶ 127).

Plaintiff further alleges that when Systec made the aforementioned representations, it was aware that they were false.  (*See id.* ¶ 131.)

5

These allegations fail to identify who made these statements and when, where, and to whom they were made.  *See Rombach*, 355 F.3d at 170.  Liberally construed, the Complaint implies the timeframe of the representations occurred between October 2016, when Plaintiff approached Defendant, and December 15, 2016, when the contracts were executed—that is, the full pre-contract negotiation period.  (*See* Pl. Memorandum in Opposition ("Pl. Mem."), ECF No. 15, at 17.)  The Court finds that this time range of several months is insufficient to plead fraud with particularity.  *See CapLOC, LLC v. McCord*, No. 17CIV5788ATRWL, 2018 WL 3407708, at \*10 (S.D.N.Y. June 12, 2018) (allegation that misrepresentations took place "over the course of several months" was insufficiently specific); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-CV-5354 KAM RLM, 2014 WL 1311979, at \*5 (E.D.N.Y. Mar. 28, 2014) (collecting cases).  In addition, the Complaint fails to meet the particularity requirement because it does not specify the speaker, location, or method of communication. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 144 (S.D.N.Y. 2019) ("[Plaintiff's] failure to specify the speakers is problematic in itself. . . . Taken in conjunction with the failure to specify the location, method of communication, and precise time frame, [Plaintiff's] claim cannot satisfy Rule 9(b).")

### b.  Elements of Fraudulent Inducement

Even if Plaintiff could meet Rule 9(b)'s pleading requirements, its claim for fraudulent inducement would still fail under Rule 12(b)(6).  Under New York law, "to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of

6

inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)).  Fraudulent inducement to enter into a contract, where "a promisor's successful attempts to induce a promisee to enter into a contractual relationship despite the fact that the promisor harbored an undisclosed intention not to perform," is one type of fraud recognized by New York courts.  *Neckles Builders, Inc. v. Turner*, 986 N.Y.S.2d 494, 497 (2nd Dep't 2014).  The claim of fraud, however, must be "collateral to the contract."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (citation omitted).

### i.  Material Misrepresentations

As to the first element, Defendant argues that certain of the statements alleged in the Complaint amount to nonactionable "puffery" and "sales talk."  The Second Circuit has described puffery as "an exaggeration or overstatement expressed in broad, vague, and commendatory language" or "[s]ubjective claims about products, which cannot be proven either true or false."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007). "Claims or statements in advertising may go beyond mere puffing and enter the realm of fraud where the product must inherently fail to do what is claimed for it."  *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970); *see also Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ("a relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud").

The Court agrees that certain of the statements amount to nonactionable puffery. Specifically, the Complaint alleges that Systec represented that it would design and manufacture

systems that "incorporated [Systec's] extensive knowledge and experience" and that would be "superior" to systems offered by competitors. (Compl. ¶¶ 126–27, *see also id.* at ¶ 46.) Plaintiff does not, however, allege that any of these statements about Systec's experience were inaccurate. Nor does the Complaint contain a single allegation describing competitors' conveyor systems or explaining how Systec's Conveyor System is inferior to such systems. Thus, Plaintiff has not sufficiently claimed these statements were false. Furthermore, a seller's claims about its experience and expertise are routinely found to be nothing more than ambiguous puffery. *See, e.g., River Birch Capital, LLC. v. Jack Cooper Holdings Corp.*, 2019 WL 1099943 at *5 (S.D.N.Y. Mar. 8, 2019) (finding that defendant's statement about its "'operating expertise'" was puffery and corporate optimism); *National Healthcare Affiliate v. Liberty Mutual Ins. Co.*, 2008 WL 11362258, *3–4 (W.D.N.Y. July 2, 2008) (representations like "'extensive experience'" cannot sustain a fraudulent inducement claim). Plaintiff has therefore failed to allege a material misrepresentation with respect to those specific statements.

The remaining representations, however, amount to more: these statements center on Systec's reassurances that the "Conveyor Systems shown on said plans would meet Plaintiff's expectations" and would improve the Plant's manufacturing efficiency and production levels. (*See* Compl. at ¶¶ 37, 46–48, 80, 125.) In general, an actionable misrepresentation during a contractual negotiation "must be factual in nature and not promissory or relating to future events that might never come to fruition." *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 402 (S.D.N.Y. 2019) (quoting *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20–21 (2d Cir. 2000)). A promise relating to a future event may be actionable, however, as when "'made with a preconceived and undisclosed intention of not performing it' is a misrepresentation of material existing fact." *Id.* (citation omitted). That is, a "relatively

concrete representation as to . . . future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

Here, however, these representations are not concrete at all, but instead comprise of vague generalizations regarding future performance. *Cf. Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."). By contrast, in *Cohen*, the defendants represented that their company's net income would significantly exceed a specific figure—the prior year's net income—despite the fact that this was practically impossible. *Cohen*, 25 F.3d at 1172. A representation about a specific dollar amount is not equivalent to Systec's alleged assurance that the Systems in the design plans would "meet Plaintiff's expectations."[2] As such, Plaintiff has failed to plausibly allege any material misrepresentation to support its fraudulent inducement claims.

### ii. Knowledge of Falsity and Intent to Defraud

To prevail on a claim of fraud in New York, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). To that end, a plaintiff must either (i) "alleg[e] facts to show that defendants had both motive and opportunity to commit fraud," or (ii) "alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Trodale Holdings LLC v.*

---

[2] Likewise, in *Barrie House Coffee Co. v. Teampac, LLC*, the other case Plaintiff cites, the representation at issue was understood to be very specific. *See* 2016 WL 3645199, at *7–8 (S.D.N.Y. 2016) (represented level of performance involved 2-3% residual oxygen level in nitrogen flushing system).

*Bristol Healthcare Investors L.P.*, 2018 WL 2980325 *3 (S.D.N.Y. 2018) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–291 (2d Cir. 2006)).

Plaintiff has alleged that certain conveyor system defects were known to Systec at the time it presented the system designs to Plaintiff, (Compl. ¶¶ 128–32), and that Systec "designed certain components . . . such that these particular components will continue to fail under the normal and intended use of the Mainline Conveyor System" (*id.* ¶¶ 80–82). If accepted as true, these facts—along with facts showing Defendant's knowledge of Plaintiff's exact needs (*id.* ¶¶ 16–28), Defendant's control of the design process (*id.* ¶¶ 35–37), and the substantial defects within the design that were present at the time it was presented to Plaintiff (*id.* ¶¶ 65–83)—indicate "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Trodale Holdings LLC*, 2018 WL 2980325 *3 (S.D.N.Y. 2018).

### iii. Reasonable Reliance

Systec contends that Plaintiff's claim is barred by the parties' contracts, which each contain both a merger provision stating that the contracts constitute the entire agreement between the parties and a warranty provision disclaiming any warranties beyond those expressed in the Contracts. (Compl. at pp. 28, 33, 40, 55.) The contracts' written specifications for the conveyor system are also detailed in a total of sixteen pages (Compl. Exs. A & B).

Ordinarily, "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made" is insufficient to bar a claim of fraudulent inducement. *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d. Cir. 1993) (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597, 598–99 (1959)). Certain exceptions have been recognized, such as when the contract disclaims specified representations, and where the contracts were found to be the product of arm's-length

negotiations between sophisticated parties. *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 487–90 (S.D.N.Y. 2017) (collecting cases and explaining exceptions). Nevertheless, whether or not a plaintiff reasonably relied upon a defendant's statements is generally a factual inquiry that cannot be resolved on a motion to dismiss. *See Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*, 2018 WL 1627266 *12 (S.D.N.Y. 2018). Accordingly, the Court will not dismiss Plaintiff's fraudulent inducement claim on this basis. *See PetEdge*, 234 F. Supp. 3d at 90 (declining to bar fraudulent inducement claim on the basis of a merger clause, recognizing that "[the Court's] analysis of the Merger Clause could be influenced by facts that are not properly before it in this motion [to dismiss].").

In sum, the allegations of fraudulent inducement in the Complaint fail to meet the particularity requirements of Rule 9(b) and do not plausibly allege any material misrepresentations. Accordingly, Plaintiff's fraudulent inducement claims are dismissed without prejudice. Plaintiff is granted leave to amend its complaint to the extent it is able to remedy these deficiencies. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

## II.    Breach of Contract

Defendant contends that even if Plaintiff prevails on its breach of contract claim, Plaintiff's available recourse is limited by the warranty and limited damages provisions of the contracts. The warranty provision provides that Systec's "liability in connection with this transaction is expressly limited to the repair or replacement of defective materials and workmanship or refund of purchase price as herein above provided as Seller may elect, all other damages and warranties, statutory or otherwise, being expressly waived by" Plaintiff. (Compl. at pp. 33, 55.) The contracts further state that "in no event shall [Systec] be subject to any other or

further liability than herein expressly given and on the conditions stated, whether in tort, contract or otherwise, arising or growing out of or in connection with either the furnishing of or failure to furnish the products to" Plaintiff.  (*Id.* at pp. 34, 56.)  These warranty and damages provisions purport to restrict Plaintiff's available remedies to the repair or replacement of defective items, or refund of the purchase price.

    **a.  Exclusive Remedies Provisions in the Warranty**

       In New York, contracting parties may restrict a "buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts." N.Y. U.C.C. Law § 2-719(1)(a) (McKinney).  These restrictions are enforceable unless the agreed upon remedy "fails of its essential purpose."  N.Y. U.C.C. Law § 2-719(2) (McKinney). "A remedy fails of its essential purpose if the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all."  *Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (internal quotation marks and citation omitted).  And while determining whether a limited remedies clause fails of its essential purpose is generally "a question of fact for the jury," *Waverly Properties, LLC v. KMG Waverly, LLC*, 824 F. Supp. 2d 547, 559 (S.D.N.Y. 2011) (citation omitted), a court may grant a defendant's motion to dismiss when the plaintiff cannot show that "enforcement of the limited remedy clause would effectively deprive them of a remedy." *Maltz*, 992 F. Supp. at 304.

       At the outset, Plaintiff alleges a plausible claim that the contracts' exclusive remedy clause limiting recovery to "repair or replacement," has failed of its essential purpose.  As alleged, Defendant was repeatedly unable "to cure and/or correct the deficiencies" in the conveyer systems.  (Compl. ¶¶ 90–99, 103–104).  Thus, the circumstances existing at the time of

the agreement had changed—namely, the understanding that Defendant could repair or replace

any defect with the conveyer systems—to cause the "repair or replacement" provision to "fail[]

of its essential purpose."  N.Y. U.C.C. Law § 2-719 (McKinney); *see also, e.g.*, *Feliciano v. Gen.*

*Motors LLC*, No. 14 CIV. 06374 (AT), 2016 WL 9344120, at *5 (S.D.N.Y. Mar. 31, 2016)

(finding plaintiff plausibly alleged that the limited warranty provision failed of its essential

purpose because the defendant "has been unable to repair or adjust" its defective product);

*Seybert-Nicholas Printing Corp. v. MLP U.S.A., Inc.*, No. 92 CIV. 6143 (RPP), 1992 WL

315643, at *1 (S.D.N.Y. Oct. 22, 1992) (same).

Plaintiff, however, fails to state a plausible claim that the exclusive remedy clause

limiting recovery "to [a] refund of purchase price as herein above provided," fails of its essential

purpose.  Restricting contractual recovery to a refund of the purchase price is an accepted

limitation in New York.  *See Maltz*, 992 F. Supp. at 304; *Moustakis v. Christie's, Inc.*, 892

N.Y.S.2d 83, 84 (1st Dep't 2009).  Plaintiff takes the position that the refund provision failed of

its essential purpose because Defendant "has not opted to refund the purchase price."  (Pl. Mem.

at 10.)  In support, Plaintiff cites *Barrie House Coffee Co. v. Teampac*, LLC, No. 13 CV 8230

(VB), 2016 WL 3645199, at *13 (S.D.N.Y. June 30, 2016).  But Plaintiff stretches *Barrie House*

*Coffee Co.*'s holding too far.  In that case, the court held that the plaintiff had made out a

plausible claim that the exclusive-remedy-refund provision failed of its essential purpose because

the defendant "refused" to honor the refund provision upon request.  *Id.* at *5.  Moreover, *Suffolk*

*Laundry Services, Inc. v. Redux Corp.*, 238 A.D.2d 577, 579 (2d Dep't 1997) does not aid

Plaintiff because it does not examine whether a refund remedy failed its essential purpose.

Lastly, *Belfont Sales Corp. v. Gruen Industries, Inc.*, 112 A.D.2d 96 (1st Dep't 1985), in which

the court found a question of fact as to whether a refund remedy failed, appears to be an outlier.

Here, Defendant has not refused to honor the exclusive remedy clause. Rather, Defendant claims it has not breached the contract and is thus waiting for the on-going litigation to be resolved. Nor, either in the complaint or in Plaintiff's briefs, is there evidence Plaintiff demanded a refund. Thus, plaintiff has not alleged that "enforcement of the limited remedy clause would effectively deprive them of a remedy" at this time. *Maltz*, 992 F. Supp. at 304; *see also Xerox Corp. v. Graphic Management Services Inc.*, 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013) (limiting damages for equipment that allegedly failed to meet expectations in accordance with the contract's limited remedy provision because the provision did not fail its essential purpose as a matter of law where purchaser could request replacement equipment or sue for the refund amount available under the contract). If the breach of contract claim is resolved in Plaintiff's favor, and Defendant continues to refuse to issue a refund to Plaintiff, Plaintiff may then have a colorable claim that the exclusive remedy clause fails of its essential purpose.

Under these circumstances, the Court finds the contracts' exclusive remedy clauses are enforceable, and the Court therefore dismisses Plaintiff's breach of contract claim to the extent it seeks damages excluded by those provisions.

**b. Limited Damages Provisions**

Contracting parties may limit or exclude consequential damages unless the such a clause "operate[s] in an unconscionable manner." N.Y. U.C.C. Law § 2-719(3) (McKinney). Determining unconscionability is a question of law. *See McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995) (collecting cases). To that end, a court "generally requires a showing that the contract was both procedurally and substantively unconscionable when made—*i.e.,* some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are

14

unreasonably favorable to the other party." *Id.* (quoting *Gillman v. Chase Manhattan Bank,* 534 N.E.2d 824, 827 (N.Y. 1988)).

The liquidated damages clauses are neither procedurally nor substantively unconscionable.  First, there were no inequities in the bargaining powers between the parties. According to Plaintiff's own complaint, it is "one of the largest manufacturers of Corrugated Boxes and Point of Purchase Displays in North America."  (Compl. ¶ 2.)  Nor has Plaintiff suggested it was deprived a "meaningful choice" when drafting the contract.  *See McNally Wellman Co.*, 63 F.3d at 1198 (2d Cir. 1995).  Second, the liquidated damages provisions were not "unreasonably favorable" to Defendant.  *See Gillman*, 534 N.E.2d at 829 (defining substantively unconscionable as "whether the terms were unreasonably favorable to the party against whom unconscionability is urged").  Both parties were subject to the provisions and their limitations.

Plaintiff pushes further beyond this general unconscionability analysis, and claims that Defendant "acted with wilfully [sic] dilatory conduct," (ECF. No. 15 at 12), which should estop Defendant from asserting the contracts' liquidated damages clauses.  Plaintiff is correct that a contracting party acting in bad faith may be estopped from asserting a limitation on consequential damages.  *See Am. Tel. & Tel. Co. v. New York City Human Res. Admin.,* 833 F. Supp. 962, 989–90 (S.D.N.Y. 1993).

Bad faith, however, is usually treated as a fact question that cannot be resolved on a Rule 12(b)(6) motion to dismiss.  *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1459 (S.D.N.Y. 1986); *ICBC (London) PLC v. Blacksands Pacific Group, Inc.*, 2015 WL 5710947 *9 (S.D.N.Y. 2015); *Gas Natural, Inc. v. Iberdrola, S.A.*, 33 F.Supp.3d 373, 383 (S.D.N.Y. 2014) ("the question of whether a party acted in good faith typically is not

suitable for resolution on a motion to dismiss . . . .").  As discussed above, Plaintiff has alleged

facts suggesting "circumstantial evidence of conscious misbehavior," facts which "nudge" the

assertion that Systec has acted in bad faith "across the line from conceivable to plausible."  *Iqbal*,

556 U.S. at 680.  At this stage of the case, the Court will not foreclose the possibility that

Plaintiff may overcome the limitation of damages clauses.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and

DENIED in part.  Plaintiff's fraudulent inducement claim is dismissed without prejudice.

Plaintiff's breach of contract claim remains, and is dismissed only to the extent it seeks damages

beyond those provided in the exclusive remedies provisions.

Should Plaintiff choose to reassert the claim that was dismissed without prejudice, Plaintiff

may file an Amended Complaint consistent with this Opinion and Order on or before August 17,

2020.  If Plaintiff elects to file an Amended Complaint, Defendants shall have thirty days from the

date of Plaintiff's filing to respond.

Accordingly, the Clerk of the Court is respectfully directed to terminate Defendant's

Motion to Dismiss at ECF No. 12.

Dated:   June 17, 2020
          White Plains, New York

SO ORDERED.

NELSON S. ROMÁN
United States District Judge